UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| DOMINIQUE PHILLIPS, as Personal Representative of the Estate of Antares Wendler-Phillips,<br><br>        Plaintiff,<br><br>      v.<br><br>METROPOLITAN TRANSPORTATION AUTHORITY, THE LONG ISLAND RAIL ROAD, and SMART, as the successor in interest to the UNITED TRANSPORTATION UNION-LOCAL 722,<br><br>        Defendants. | 21-cv-005679 (NRM) (LB)<br><br>**MEMORANDUM AND ORDER** |

NINA R. MORRISON, United States District Judge:

In October 2021, Plaintiff filed a wrongful death claim against his former employer and former union. He alleges that his wife died because of a stress-induced heart attack that he asserts was "a direct result of" discrimination he faced while employed at the Long Island Rail Road Company ("LIRR") and which ultimately led to his termination. Am. Compl. 2, ECF No. 19.[1] However, Plaintiff lost his employment discrimination case upon which this wrongful death claim is based on summary judgment, and the Second Circuit affirmed the grant of summary judgment in that earlier-filed case in January 2021. *Phillips v. Long Island R.R. Co. (Phillips*

---

[1] All page references use ECF pagination.

1

*I*), No. 13-cv-7317, 2019 WL 1757176, at *1 (E.D.N.Y. Mar. 4, 2019), *report and recommendation adopted*, 2019 WL 1758079 (Mar. 25, 2019), *aff'd*, 832 F. App'x 99 (2d Cir. 2021).

Defendants LIRR and Metropolitan Transportation Authority ("MTA") move to dismiss the case based on res judicata (claim preclusion) and Defendants LIRR, MTA, and United Transportation Union (now SMART-TD) Local 722 ("the Union") move to dismiss based on collateral estoppel (issue preclusion). *See* Mem. in Supp. of Defs. MTA & LIRR Mot. to Dismiss ("LIRR Mem.") 11–13, ECF No. 28-1; Mem. in Supp. of Def. Union Mot. to Dismiss ("Union Mem."), ECF No. 31-1. For the reasons that follow, the Court grants Defendants' motion to dismiss.

## FACTUAL BACKGROUND

Before filing the instant action in 2021, Plaintiff filed a lawsuit in this District in 2013 alleging employment discrimination, harassment, and retaliation against his former employer. Because the facts and procedural history of that case are relevant to the Court's inquiry in determining whether res judicata and collateral estoppel bar his current suit, the Court will briefly summarize the previous action before addressing the instant action.

### I.    Plaintiff's Prior Employment Discrimination Lawsuit

### A. Procedural History

In December 2013, Plaintiff filed a complaint in this District alleging employment discrimination and retaliatory labor practices against his former employer LIRR and his former union United Transportation Union-Local 722. Compl., *Phillips I* (No. 13-cv-7317), ECF No. 1. He filed a Third Amended Complaint

in October 2015 and dropped the Union as a defendant. Third Am. Compl., *Phillips I* (No. 13-cv-7317), ECF. No. 58.  Defendant LIRR moved for summary judgment in February 2018, LIRR Mem. in Supp. of Defs' Mot. for Summ. J., *Phillips I* (No. 13-cv-7317), ECF No. 116, and that motion was referred to Magistrate Judge Lindsay.  *See* Order Referring Mot., *Phillips I* (No. 13-cv-7317), ECF No. 122.

On March 4, 2019, Judge Lindsay recommended that the court grant Defendant's motion for summary judgment.  *Phillips I*, 2019 WL 1757176; R&R, *Phillips I* (No. 13-cv-7317), ECF. No. 132.  After denying Plaintiff's request for a six-month extension to file his objections to the R&R and receiving no objections thereafter, Judge Seybert adopted the R&R.  *Phillips I*, 2019 WL 1758079.  Plaintiff appealed and the Second Circuit affirmed the district court's adoption of the R&R, finding that Magistrate Judge Lindsay "did not commit plain error" and that the R&R "gave clear warning that failure to object to it within fourteen days would result in a waiver of objections and preclude appellate review."  *Phillips I*, 832 F. App'x at 100.

## B. Defendant LIRR's Alleged Discriminatory Conduct and Plaintiff's History of Absences

Plaintiff, a Black man, was first employed by the LIRR in February 2006. *Phillips I*, 2019 WL 1757176, at *2.[2]  He was terminated on December 3, 2012.  *Id.* at *5.  He alleged that his discrimination began in September 2010 when he returned from disability leave following a shoulder injury.  *Id.* at *2.  Upon his return, he

---

[2] The facts in *Phillips I* were drawn from the parties' Local Rule 56.1(a) Statements.  *Id.* at *2.

claimed that he was not given the work responsibilities he should have received based on his seniority, such as cleaning the train bathrooms and performing paper runs. *Id.* However, he admitted that he was still sometimes assigned to clean bathrooms and that a co-worker, a Black woman, was "often" assigned to clean bathrooms as well. *Id.* He reported the incidents to the Union but did not report them to LIRR. *Id.* at *3.

In May 2011, a white male employee became his supervisor. *Id.* Plaintiff alleged that the new supervisor then began to harass Plaintiff and other employees (including one white employee). *Id.* As an example of discrimination, Plaintiff alleged that he was directed to use a defective mop, but he also admitted that a white employee was also directed to use that same mop at another time. *Id.* Plaintiff also based his discrimination claim "on a perceived unfair distribution of the weekly workload," in which "he was assigned to clean between eighteen and twenty-four cars over a three-day period" while a white coworker "was only assigned to clean six to eight cars." *Id.* at *4. He also admitted that another Black coworker was also assigned to clean six to eight cars and two other Black employees had lighter workloads than Plaintiff's. *Id.*

In March 2012, the Union wrote to the LIRR and advised the LIRR that Plaintiff was suffering from "extreme emotional stress and anxiety that his treating physicians relate to work situations." *Id.* According to the letter, Plaintiff "claims his gang foreman at the Hempstead Yard is harassing him and causing this stress by changing his job assignment," by, *inter alia*, not allowing him to clean bathrooms. *Id.*

4

The LIRR commenced an investigation through Marilyn Kustoff. *Id.* Plaintiff refused to meet with Kustoff and the director of Diversity Management for the LIRR. *Id.* "On July 3, 2012, the LIRR advised the Union that since Plaintiff had refused to be interviewed by LIRR representatives Defendant [LIRR] concluded that Plaintiff 'd[id] not desire LIRR to investigate or address his complaint.'" *Id.*

On April 28, 2011, Plaintiff was issued a reprimand — waiving his right to an internal trial — for violating the LIRR's absence policy from January through February 28, 2011. *Id.* After an internal trial for further violations of the absence policy from April 1, 2011 to November 30, 2011, Plaintiff was found guilty on October 3, 2012 and issued a twenty-day suspension.[3] *Id.* After another internal trial for further violations of the absence policy from December 1, 2011 to December 31, 2011, Plaintiff was found guilty and issued a forty-five-day suspension.[4] *Id.* After a series of adjournments, Plaintiff had two more trials, one on October 26, 2012 and the another on December 3, 2012; Plaintiff was found guilty of again violating the absence policy and terminated at both trials. *Id.* at *5. The October trial involved absences from April 17 through 20, 2012 and the December trial involved absences during the period from February 1, 2012 to April 20, 2012. *Id.* On June 2, 2015, an arbitration

---

[3] The Union appealed and on June 5, 2015, an arbitration panel concluded that "LIRR met its burden of proof that [Plaintiff] violated its attendance policy, although it modified the discipline to a reprimand and final warning." *Id.* (quotation omitted).

[4] The Union appealed this as well and on June 5, 2015, an arbitration panel also concluded that LIRR met its burden of proof that Plaintiff violated its attendance policy but modified the discipline to a twenty-day suspension. *Id.*

panel upheld Plaintiff's termination and concluded that "the record contains credible and reliable evidence that [Plaintiff] violated [LIRR's] rules." *Id.*

### C. Judge Lindsay's Recommendations

In October 2018, Judge Seybert referred LIRR's motion for summary judgment to Magistrate Judge Lindsay for a Report and Recommendation. *See* Order Referring Mot., *Phillips I.*  In the absence of direct evidence of discriminatory conduct, Judge Lindsay analyzed Plaintiff's claims for employment discrimination under Title VII, the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL")" based on race and disability under the three step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973).  *Phillips I*, 2019 WL 1757176, at *7.  As the Court explained:

> Under *McDonnell Douglas* and its innumerable progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell Douglas* framework and its presumptions and burdens disappear, and, thus, (3) the burden shifts back to the plaintiff to show that the employer's reason is pretextual and that it masks the employer's true discriminatory reason.

*Id.* (citing *Patterson v. City of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004)).

Judge Lindsay recommended that the Court find Plaintiff's FMLA claim to be untimely. *Id.* at *9.  In particular, Judge Lindsay recommended that the three-year statute of limitation not apply — which requires a finding that Defendants' conduct was willful — because "the record clearly reveals that Plaintiff's repeated lateness

6

and multiple absences without prior notice most of which occurred outside the FMLA leave period were the basis of his termination." *Id.*

As for Plaintiff's race discrimination claims under Title VII, NYSHRL, and NYCHRL, Judge Lindsay recommended that the Court grant summary judgment because Plaintiff failed to make a prima facie case of racial discrimination, explaining that:

> Plaintiff was terminated for excessive absence. Plaintiff claims he was absent from work because he was too anxious about the harassment to go to work and he was suffering from anxiety and depression. There is no evidence in the record, however, from which a reasonable jury could conclude that the "harassment" Plaintiff complains of amounted to actionable discriminatory treatment. Plaintiff complained of being forced to use a defective mop, park in the employees parking lot and not being assigned the appropriate level of work based upon his seniority, however, in each instance other employees in the same protected class were subjected to the same treatment. While this treatment may have amounted to harassment, there must be some evidence that Plaintiff was harassed "because of" his race.

*Id.* at *13.[5]

Judge Lindsay recommended the same for his hostile work environment claim, noting that "Plaintiff has failed to raise a genuine issue of fact that he suffered an objectively hostile work environment on the basis of his race." *Id.* at *17. However, even if Plaintiff had established an inference of discrimination sufficient to state a prima face case, Judge Lindsay further noted that Defendant "offered a legitimate,

---

[5] Judge Lindsay recommended that the court find that the NYCHRL did not apply to Plaintiff's claims because "Plaintiff neither resides nor works in New York City and the discriminatory and retaliatory conduct of which Plaintiff complains had no impact within New York City." *Id.* at *12.

nondiscriminatory reason for Plaintiff's termination: he violated the LIRR absence control policy of at least five separate occasions." *Id.* at *15.

Judge Lindsay also recommended that the court dismiss Plaintiff's disability-discrimination claim because the record "indicate[d] Plaintiff took FMLA leave to assist his wife in her recuperation from shoulder surgery and d[id] not in any way identify a disability on Plaintiff's behalf.  There is no indication in the record that Plaintiff ever applied for FMLA leave for a disability of his own." *Id.* at *20 (citations omitted).

Lastly, Judge Lindsay recommended that the court deny Plaintiff's retaliation claims because Plaintiff failed to identify (1) any protected activity in which he complained of unfair treatment due to his membership in a protected class or (2) an adverse action that would dissuade a reasonable employee from making or supporting a charge of discrimination, besides his termination.  *Id.* at *21.  As for the termination, Judge Lindsay noted that "Defendant has proffered a non-retaliatory reason for its termination of Plaintiff."  *Id.*  Judge Lindsay found that the proffered reason was legitimate and not pretextual, because "[i]t is undisputed that Plaintiff received five notices of violation of Defendant's absence control policy and ultimately was terminated as a result of those violation[s]" and that Plaintiff's "termination was reviewed by a neutral arbitration panel" before it was upheld.  *Id.*

Plaintiff did not file objections to the R&R, and Judge Seybert adopted it in full by electronic order dated March 25, 2019.  *Phillips I*, 2019 WL 1758079.  Plaintiff appealed, and on January 25, 2021, the Second Circuit affirmed, finding that the

Judge Lindsay "did not commit plain error" and the R&R "gave clear warning that failure to object to it within fourteen days would result in a waiver of objections and preclude appellate review." *Phillips I*, 832 F. App'x at 100.

## II.    The Instant Wrongful Death Case

On October 4, 2021, nine months after the Second Circuit affirmed the dismissal of his employment discrimination lawsuit, Plaintiff filed the present case *pro se*.  Compl.  On December 16, 2021, the district court (Kovner, J.) dismissed the action *sua sponte* with prejudice, finding that the action was frivolous since the dispositive defenses of res judicata and collateral estoppel "clearly exist[] on the face of the complaint."  Mem. & Order, ECF No. 9 (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)).  The court also found that "better pleading" could not cure the barriers to the Complaint.  *Id.* at 7 (quoting *Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)).  Plaintiff appealed, *see* Notice of Appeal, ECF No. 10, and while the case was on appeal, it was reassigned to the undersigned on October 14, 2022.

On appeal, the Second Circuit vacated and remanded, finding that Plaintiff should have the opportunity to amend his Complaint and Defendants should have the opportunity to raise any additional arguments.  *Phillips v. Long Island R.R. Co.*, No. 22-123, 2023 WL 2317231 (2d Cir. Mar. 2, 2023).

On June 26, 2023, Plaintiff, now represented by counsel, filed an Amended Complaint.  Am. Compl.  The Amended Complaint dropped the Eastern District of New York as a defendant and added the MTA as a defendant.  *See id.*

9

Plaintiff characterizes his Amended Complaint as "a wrongful death complaint against the defendants arising from their relentless pattern of discrimination, defamation, harassment, and retaliation against [Plaintiff] during his employment with the LIRR, and which in turn led to his unlawful termination from that position." *Id.* at 2.[6]  Plaintiff alleges that in 2019, the "extreme stress inflicted upon [him] as a direct result of defendants' actions ultimately caused his wife . . . to suffer . . . a fatal, stress-induced heart attack."  *Id.*  He claims that the Court has jurisdiction over this action under, *inter alia*, Title VII of the Civil Rights Act.  *Id.* at 3.

As with his original employment discrimination action, he alleges here that his discrimination against him began in September 2010 when he returned from disability leave following a shoulder injury.  *Id.* at 4–5.  He alleges that his supervisor "exhibited discriminatory and confrontational behavior towards him and three African American colleagues" in the month of September 2010 and that despite reporting the incidents to the Union, no action was taken.  *Id.* at 5.  He does not specify what the discriminatory incidents were.

Plaintiff further claims that he was wrongfully accused of violating the LIRR's absence policy in March 2011 after taking leave under FMLA to attend multiple funerals in January and February 2011.  *Id.* at 5.

Plaintiff alleges that on Memorial Day 2011, his white supervisor treated him differently than a less senior white colleague by giving the white colleague more

---

[6] The Amended Complaint does not have paragraph numbers.

seniority-based duties such as cleaning train bathrooms. *Id.* at 6. He claims the Union did not do anything when he reported these incidents. *Id.* at 7. Plaintiff claims he was falsely accused of being "AWOL" on December 15, 2011, and again multiple times in late December due to combining his lunch breaks, which he claims he had permission to do. *Id.* at 7. On January 20, 2012, an inspector told Plaintiff's supervisor that Plaintiff had requested a letter supporting claims of workplace harassment, which Plaintiff claims led to more harassment. *Id.* at 8. The increased harassment, in turn, led to chest pains and a hospitalization on February 16, 2012. *Id.* Plaintiff claims the Union refused to file a grievance regarding his supervisor's ongoing harassment. *Id.*

After Plaintiff threatened to report the Union to the NLRB, the Union filed a grievance and two white individuals from the M of E Department & Trial Office, denied Plaintiff's disability accident status on March 26, 2012. *Id.* at 9.[7] The Union did not appeal, which Plaintiff alleges is part of a larger campaign of harassment. *Id.*

Plaintiff alleges that he was again falsely charged as being "AWOL" from April 17 through May 2, 2012, and that he was marked as "out of work" by LIRR's Medical Department from April 16 through April 30. *Id* at 10. Plaintiff and his wife went to a series of meetings with the Union office in which his wife was "visibly upset and emotional." *Id.* at 11.

Plaintiff claims that his supervisors fabricated charges for "drug & alcohol" and "insubordination" in October 2012. *Id.* He was terminated on October 26 and

---

[7] The Amended Complaint does not explain what M of E stands for.

December 3, 2012. *Id.* His wife passed away on October 4, 2019. *Id.* at 13. "Plaintiff attributes her death to the distress caused by the Defendant[s'] alleged misconduct, which includes willful harassment, discrimination, defamation of character, due process violations, retaliation, unlawful suspension, wrongful termination, emotional distress, embarrassment and humiliation, and financial hardship." *Id.*

## LEGAL STANDARD

A court may dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"On a 12(b)(6) motion to dismiss involving the affirmative defense of res judicata, the Court may consider 'all relevant facts [ ] shown in the plaintiff's complaints, attachments thereto, and in the court's own records, which are appropriate for judicial notice.'" *Rosas v. Shorehaven Homeowners Ass'n, Inc.*, No. 23-cv-4052, 2024 WL 1120638, at *3 (S.D.N.Y. Mar. 14, 2024) (alteration in original) (quoting *Fischer v. Brushy Mountain Bee Farm, Inc.*, No. 17-cv-10094, 2023 WL 8603027, at *6 (S.D.N.Y. Dec. 12, 2023)); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 498 (2d Cir. 2014) ("A court may consider a res judicata defense on a Rule 12(b)(6) motion to dismiss when the court's inquiry is limited to the plaintiff's complaint, documents attached or incorporated therein, and materials appropriate for judicial notice.").

In addition, "[i]t is well-settled that a res judicata challenge may properly be raised via a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Tal Props. of Pomona, LLC v. Vill. of Pomona,* No. 19-cv-6838, 2021 WL 4066845, at *2 (S.D.N.Y. Sept. 7, 2021) (quoting *Iotova v. Patel*, 293 F. Supp. 484, 487 (S.D.N.Y. 2018)), *aff'd*, No. 22-1826, 2023 WL 2924571 (2d Cir. Apr. 13, 2023). "It is defendants' burden to prove that res judicata bars the second action, not the plaintiffs' to prove that they are not barred." *Ramirez v. Wells Fargo Bank, N.A.*, No. 19-cv-5074, 2021 WL 9564023, at *4 (E.D.N.Y. Mar. 24, 2021) (quoting *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 161 (2d Cir. 2017)).

## DISCUSSION

For the reasons that follow, the Court finds that the instant action is barred by res judicata as to the LIRR and MTA and barred by collateral estoppel as to the Union.

### I.   Res Judicata (Claim Preclusion) Bars Plaintiff's Claims Against the LIRR and MTA

"The doctrine of . . . claim preclusion[] holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (quoting *Monahan v. N.Y. City Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000)). "Otherwise known as res judicata, claim preclusion bars a subsequent action — involving either the same plaintiffs or parties in privity with those plaintiffs — from asserting claims that were, or could have been, raised in a prior action that resulted in an adjudication on the merits." *Id.* (citing *Allen v.*

*McCurry*, 449 U.S. 90, 94 (1980)).  "Even claims based upon different legal theories are barred provided they arise from the same transaction or occurrence." *Cieszkowska v. Gray Line N.Y.*, 295 F.3d 204, 206 (2d Cir. 2002) (quoting *L–Tec Elecs. Corp. v. Cougar Elec. Org., Inc.*, 198 F.3d 85, 88 (2d Cir. 1999)); *see also Netrebko v. Metro. Opera Ass'n, Inc.*, No. 23 Civ. 6857, 2024 WL 3925377, at *5 (S.D.N.Y. Aug. 22, 2024) ("Res judicata applies to a claim 'brought to a final conclusion, . . . even if based upon different theories.'" (quoting *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 347–48 (1999))).

"To prove that res judicata bars a subsequent action, a party must show that the earlier decision was '(1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action.'" *Go N.Y. Tours, Inc. v. Gray Line N.Y. Tours, Inc.*, No. 23-cv-4256, 2024 WL 3952190, at *7 (S.D.N.Y. Aug. 27, 2024) (quoting *EDP Med. Comput. Sys. v. United States*, 480 F.3d 621, 624 (2d Cir. 2007)).

### A.  Final Judgment on the Merits

In Plaintiff's earlier lawsuit (*Phillips I*) alleging a pattern of discrimination and retaliation by his former employer, the magistrate judge recommended dismissal of the entire action on LIRR's motion for summary judgment, the court adopted the recommendation, and the Second Circuit affirmed.  "[S]ummary judgment is an adjudication on the merits for res judicata purposes." *Smith v. City of New York*, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015) (quoting *Rafter v. Liddle*, 704 F. Supp. 2d 370, 375 (S.D.N.Y. 2010)), *aff'd*, 664 F. App'x 45 (2d Cir. 2016).

14

### B. Same Parties and Their Privities

*Phillips I* was a judgment in favor of LIRR and the MTA was not a defendant in that suit.  However, if there is privity between the LIRR and MTA for purposes of res judicata, then *Phillips I* would also preclude the instant case against the MTA.

"For purposes of claim preclusion, the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom res judicata is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995). "'There is no bright line rule' as to whether privity exists for res judicata purposes.  'Rather, a finding of privity depends on whether, under the circumstances, the interests of the defendant were adequately represented in the earlier action.'" *Akhenaten v. Najee, LLC*, 544 F. Supp. 2d 320, 328–30 (S.D.N.Y. 2008) (alterations omitted) (citation omitted) (quoting *Amalgamated Sugar Co. v. NL Indus., Inc.*, 825 F.2d 634, 640 (2d Cir. 1987)).  Thus, "[p]rivity may be found where a party's interest in litigation is virtually identical to an interest it had in a prior litigation, where it was not actually named, but can be said to have had 'virtual representation.'" *Melwani v. Jain*, No. 02 Civ. 1224, 2004 WL 1900356, at *2 (S.D.N.Y. Aug. 24, 2004) (quoting *Chase Manhattan Bank*, 56 F.3d at 346).

Here, Plaintiff did not plead any claims that were unique to the MTA but instead repeated his allegations against the LIRR in an attempt to impute liability onto the MTA.  Thus, because the conduct challenged in both cases against both entities are the same, the LIRR adequately represented the MTA's interests in

*Phillips I,* which warrants a finding that privity exists for purposes of res judicata. *See, e.g., Akhenaten,* 544 F. Supp. 2d at 328–30 (finding privity for purposes of res judicata where the court could "discern no distinctions in any of Plaintiff's pleadings as to the roles played by different defendants in these acts"); *Melwani,* 2004 WL 1900356, at *3 (finding privity for purposes of res judicata "given the identity of interests and incentives between the two companies in defending against the same claims based on the same alleged wrongdoing").   Moreover, a finding of privity between LIRR and MTA for purposes of res judicata is further supported by the parties' "corporate parent-subsidiary relationship." *Pittman v. Scholastic Corp.*, No. 24-cv-1407, 2024 WL 2747802, at *3 n.4 (S.D.N.Y. May 22, 2024) (collecting cases); *see also Byron v. Genovese Drug Stores, Inc.*, No. 10-cv-3313, 2011 WL 4962499, at *3 (E.D.N.Y. Oct. 14, 2011) ("As a wholly-owned subsidiary, it cannot be found that these two entities are so distinct as to warrant duplicative litigation.").

## C. Same Cause of Action

A "first judgment will generally have preclusive effect only where the transaction or connected series of transactions at issue in both suits is the same, that is 'where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first.'" *Baluch v. 300 W. 22 Realty, LLC*, No. 21-cv-9747, 2023 WL 112547, at *3 (S.D.N.Y. Jan. 5, 2023) (alterations omitted) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463–64 (2d Cir. 1996)). "[C]laim preclusion may apply where some of the facts on which a subsequent action is based post-date the first action but do not amount to a new claim." *Storey v. Cello*

*Holdings, LLC*, 347 F.3d 370, 384 (2d Cir. 2003). "Whether there is claim preclusion depends upon whether the same or connected transactions are at issue and the same proof is needed to support the claims in both suits or, in other words, whether facts essential to the second suit were present in the first suit." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 139 (2d Cir. 2000) (citing *NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983)).

"When analyzing the 'same cause of action' requirement, courts in this Circuit consider whether the subsequent action concerns 'the same claim — or nucleus of operative facts — as the first suit applying three considerations: '(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations.'" *Go N.Y. Tours, Inc.*, 2024 WL 3952190, at *9 (quoting *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008)); *see also Dodson v. Int'l Cricket Council*, No. 18-cv-2548, 2020 WL 13890237, at *3 (E.D.N.Y. Nov. 20, 2020) ("In deciding whether a suit is barred by res judicata, it must first be determined that the second suit involves the same claim — or nucleus of operative fact — as the first suit." (quoting *Waldman v. Vill. Of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000))).

Here, Plaintiff is attempting to relitigate the same discrimination claims that a court already dismissed. This is exemplified by the fact that he claims that the Court has jurisdiction over this action under, *inter alia*, Title VII of the Civil Rights Act — the same statute under which he brought his earlier, unsuccessful employment

17

discrimination case.  *See* Am. Compl. at 3; *see also* Third Am. Compl. at 1, *Phillips I*.
Moreover, as previously mentioned, Plaintiff characterizes his Amended Complaint
as "a wrongful death complaint against the defendants arising from their relentless
pattern of discrimination, defamation, harassment, and retaliation against [Plaintiff]
during his employment with the LIRR" and further alleges that the "extreme stress
inflicted upon [him] as a direct result of defendants' actions ultimately cased his
wife . . . to suffer . . . a fatal, stress-induced heart attack."  *Id.*

The majority of Defendant LIRR's alleged conduct in the Plaintiff's Amended
Complaint in this case was litigated in *Phillips I,* with the exception of Plaintiff's
contention that his employer fabricated charges against him regarding drug and
alcohol use.  *See* Third. Am. Compl. at 12, *Phillips I*.  However, all the acts alleged in
the instant action satisfy the three prongs for determining whether the subsequent
action concerns the same claim.  First, Defendant LIRR's conduct in the instant case
is linked to "the same course of unlawful conduct" in *Phillips I*.  *Soules v. Conn. Dep't
of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) (finding two cases
involving similar conduct satisfied first prong).  Thus, the actions in this case are
"related in time, space, origin, or motivation" to the discriminatory conduct in *Phillips
I*.  *Id.* at 55 (quoting *Channer*, 527 F.3d at 280).  Moreover, because the two cases
"allege the same conduct by defendants, there can be no question that addressing all
of the claims at once would form a 'convenient trial unit' and would 'conform[] to the
parties' expectations.'" *Id.* at 56 (quoting *Channer*, 527 F.3d at 280).

18

To be sure, the accusations regarding the fabricated charges "could have" been brought in *Phillips I*, which further supports a finding that the second suit is barred by res judicata. *See, e.g.*, *Bank of N.Y.*, 607 F.3d at 918 ("[R]es judicata . . . bars a subsequent action — involving either the same plaintiffs or parties in privity with those plaintiffs — from asserting claims that were, or *could have* been, raised in a prior action that resulted in an adjudication on the merits." (emphasis added) (quoting *Allen*, 449 U.S. at 94)). That is particularly so because "[t]he facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit. It is instead enough that the facts essential to the second were [already] present in the first." *Go N.Y. Tours, Inc.*, 2024 WL 3952190, at *9 (quoting *Channer*, 527 F.3d at 280). Furthermore, Plaintiff does not allege any new conduct after his termination on December 3, 2012, which was the most recent wrongful conduct alleged in *Phillips I*. *See* Compl.; Third Am. Compl., *Phillips I*.

Accordingly, the Court finds the instant case against the LIRR and MTA barred by res judicata.

## II.   Collateral Estoppel (Issue Preclusion) Bars Plaintiff's Claims Against MTA and Union Defendants

"[I]ssue preclusion, also known as collateral estoppel, bars a plaintiff from relitigating an *issue* that has already been fully and fairly litigated in a prior proceeding." *Bank of N.Y.*, 607 F.3d at 918 (citing *Purdy*, 337 F.3d at 258). Collateral estoppel applies "regardless of whether the two suits are based on the same cause of action." *Griffin v. Sirva, Inc.*, 291 F. Supp. 3d 245, 251–52 (E.D.N.Y. 2018) (quoting *Postlewaite v. McGraw-Hill*, 333 F.3d 42, 48 (2d Cir. 2003)). To determine whether

issue preclusion applies, courts focus on whether: "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bank of N.Y.*, 607 F.3d at 918 (quoting *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006)).

Here, all four factors are easily satisfied. As discussed above, Plaintiff is attempting to relitigate his employment discrimination case in this lawsuit. Given that the two cases involve the same core set of facts and issues, Plaintiff "may not relitigate determinations of fact or mixed questions of law and fact that were raised, litigated, and necessarily decided" in *Phillips I. Forrester v. Corizon Health, Inc.*, 278 F. Supp. 3d 618, 629 (E.D.N.Y. 2017) (citing *United States v. Moser*, 266 U.S. 236, 242 (1924)), *aff'd*, 752 F. App'x 64 (2d Cir. 2018). Moreover, there are no allegations that the Union participated in any wrongful conduct after his termination, which was the most recent conduct complained about in *Phillips I*.

Crucially, Plaintiff's wrongful death claim is based on his allegation that Defendant LIRR discriminated against him and that this alleged pattern of discrimination was the direct cause of his late wife's heart attack. *See* Am. Compl. at 2. But a court has already determined that, as a matter of law, Defendant LIRR did not discriminate against him. Accordingly, Plaintiff is precluded from arguing that the unlawful discrimination he allegedly suffered at his job caused his wife's death. *See, e.g.*, *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (finding that a prior

determination that counsel's performance was not deficient would preclude any subsequent malpractice claim requiring the same). Plaintiff has not presented a separate claim or set of facts against the Union that could support a finding of discrimination, harassment, or retaliation without necessarily disturbing the court's earlier determination that Plaintiff was terminated for his excessive absences and not because of discrimination.

Accordingly, the Court finds the instant case against the Union barred by collateral estoppel.

## **CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motions to dismiss.

SO ORDERED.

                                        */s/ Nina R. Morrison*                    

                                        NINA R. MORRISON
                                        United States District Judge

Dated: Brooklyn, New York
         September 30, 2024